MARGARET S. GLASS, Plaintiff v. J. CARTER GLASS, Defendant

No. COA98-253

(Filed 29 December 1998)

## 1. Divorce— alimony—calculation of income—severance pay

An order granting child support and alimony was remanded where the court did not include in its calculation of plaintiff's income amounts from her employer labeled "severance payment." Severance pay is properly includable in a spouse's income for purposes of determining the amount and duration of an alimony award but it is not clear in this case whether the payment should be classified as severance pay. In determining how to characterize the payment on remand, the trial court should use the analytic approach adopted in *Johnson v. Johnson*, 317 N.C. 437.

## 2. Divorce— alimony—deferred compensation and 401(K) contributions

The trial court erred in an alimony action by excluding plaintiff's deferred compensation and 401(K) contributions from her net disposable take home pay. Although the court can properly consider the parties' custom of making regular additions to savings plans as a part of their standard of living in determining the amount and duration of alimony, excluding amounts paid into savings accounts would allow a spouse to reduce his or her support obligation or increase an alimony award by merely increasing a savings deduction or deferring a portion of income to a savings account.

## 3. Divorce— alimony—plaintiff's income—findings insufficient

The trial court erred in an alimony action in its calculation of defendant's income by finding without supporting evidence that defendant, who sells insurance, would pick up additional business to replace loss ratio bonus income and commissions from coastal properties following hurricanes. Furthermore, the Court of Appeals could not tell from the record whether the trial court considered this improper finding in making its awards of alimony and child support.

## 4. Divorce— alimony—marital misconduct—reckless spending

The trial court did not err in an alimony action by concluding that plaintiff had not committed marital misconduct by spending

$30,000 on clothing the year prior to the separation and a further $23,520 on clothes between hearings in June and January. The record reveals that the court found that the lifestyle established by the parties included excessive spending in numerous areas.

**5. Divorce— alimony—effective date of new statute—award for prior period**

There was harmless error in an alimony action where defendant contended that the court awarded alimony for a period prior to 1 October 1995, the effective date of the new statute. Under the court's order, defendant accumulated a credit against future court-ordered alimony and support payments.

**6. Child Support, Custody, and Visitation— support—determination of income**

A child support order was remanded where the court erred in calculating the parties' income, as discussed in the alimony portion of the opinion.

Appeal by defendant from alimony and child support order entered 4 March 1997 by Judge Fred M. Morelock in Wake County District Court. Heard in the Court of Appeals 17 November 1998.

Margaret S. Glass (plaintiff) and J. Carter Glass (defendant) were married on 9 April 1976. They have one minor child, John, born 20 February 1989. The parties separated on 31 March 1995 when defendant moved from the marital residence.

On 11 July 1995, plaintiff filed an action for alimony and alimony *pendente lite*, equitable distribution, custody and support of the minor child, and counsel fees. Defendant counterclaimed for custody, child support, and equitable distribution, raising numerous affirmative defenses to the alimony claim, including excessive spending by plaintiff-wife.

On 21 November 1995, plaintiff voluntarily dismissed her claims for alimony and alimony *pendente lite* without prejudice. On the same day, plaintiff filed a new action for postseparation support, alimony, and counsel fees. Defendant answered the new complaint, again raising excessive spending by plaintiff-wife as a defense. The parties were divorced on 26 April 1996. The alimony, custody, and equitable distribution cases were consolidated by agreement and tried in June 1996.

The trial court entered an order and judgment in the equitable distribution case on 15 October 1996 and no appeal was taken. In November 1996, the trial court announced its tentative decision in the alimony and child support case. Before an order was prepared, however, defendant moved that the trial court hear additional evidence relating to events which occurred after the June 1996 hearing. The trial court allowed the motion, received additional evidence, and entered its order on 4 March 1997.

Defendant was required by the March 1997 order to pay alimony of $3,500.00 per month for ten years, retroactive to 1 April 1995. After credits for voluntary alimony payments, defendant had an alimony arrearage of $17,267.02. The trial court also required defendant to pay child support of $2,500.00 per month and one-half the child's unreimbursed medical expenses. Plaintiff's motion for counsel fees was denied. Defendant appealed, assigning numerous errors.

*Marc W. Sokol, P.A., by Marc W. Sokol and Sema E. Lederman, for plaintiff appellee.*

*Edward P. Hausle, P.A., by Edward P. Hausle, for defendant appellant.*

HORTON, Judge.

Defendant contends the trial court erred in calculating the incomes of both plaintiff and defendant, and that these basic errors call into question the trial court's conclusion that defendant was the supporting spouse and plaintiff was the dependent spouse. Defendant further argues these errors require the case to be remanded so the trial court may make appropriate findings about the parties' incomes and expenses, and so that it may set proper amounts of alimony and child support.

Defendant argues the trial court erred in failing to find that plaintiff was guilty of marital misconduct by reason of her excessive spending, and that alimony should not have been ordered in any amount. Finally, defendant contends that due to the substantial changes in the alimony law effective 1 October 1995, the trial court could not order alimony for the period prior to the date plaintiff filed her second alimony complaint.

## I. Alimony

Until 1967, North Carolina alimony law remained essentially unchanged. *See* Sally Burnett Sharp, *Step by Step: The Development*

*of the Distributive Consequences of Divorce in North Carolina*, 76 N.C.L. Rev. 2017, 2029 (1998) (hereinafter "Sharp"). In 1967, the law of alimony was extensively rewritten and codified as N.C. Gen. Stat. § 50-16.1, *et seq*. Alimony remained fault-based, and was available to a spouse only upon findings that the spouse was dependent, that the other spouse was the supporting spouse, and that the supporting spouse had "committed one of the ten, largely traditional, fault grounds . . . ." Sharp, 2032-2033 (footnotes omitted).

In 1995, a "new" alimony law was enacted by the North Carolina General Assembly. Act of 21 June 1995, ch. 319, 1995 N.C. Sess. Laws 641, codified as N.C. Gen. Stat. §§ 50-16.1A to -16.9 (1995). By its terms, the new alimony law became effective 1 October 1995, and did "not apply to pending litigation, or to future motions in the cause seeking to modify orders or judgments in effect on October 1, 1995." 1995 N.C. Sess. Laws 319, Sec. 12.

One leading commentator on North Carolina family law has summarized the effect of the legislative changes as follows:

> Despite [a] tenacious obsession with adultery, however, the 1995 statutes . . . diminished the role of fault, at least in the early stages of the divorce process, when dependent spouses are most likely to suffer economically and are often almost totally unable to confront the other spouse on anything approaching an equal footing. Most significantly, the new statutes limit admission into evidence only that fault (as defined in § 50-16.3A(b)) that occurred before or on the date of separation, a radical and extremely salutary change from previous law.

Sharp, 2035 (footnotes omitted).

N.C. Gen. Stat. § 50-16.1A (1995) contains definitions of key terms in the new alimony law. N.C. Gen. Stat. § 50-16.2A (1995) sets out the procedure for ordering postseparation support, the successor to alimony *pendente lite*. N.C. Gen. Stat. § 50-16.3A (1995) outlines the procedure for alimony awards.

Assuming that a spouse is entitled to alimony under the provisions of N.C. Gen. Stat. § 50-16.3A(a), its amount and duration are determined in accordance with the provisions of N.C. Gen. Stat. § 50-16.3A(b), which requires the trial court to consider "all relevant factors," including 14 listed factors and a 15th "catch-all" factor. For purposes of this appeal, the crucial factors are:

(1) The marital misconduct of either of the spouses. . . .

(2) The relative earnings and earning capacities of the spouses;

\* \* \* \*

(4) The amount and sources of earned and unearned income of both spouses, including, but not limited to, earnings, dividends, and benefits such as medical, retirement, insurance, social security, or others;

\* \* \* \*

(8) The standard of living of the spouses established during the marriage[.]

*Id.*

Against this statutory background, we will discuss defendant's assignments of error.

## A.  Plaintiff's Severance Pay

**[1]** Defendant contends the trial court erred in its calculation of plaintiff's income as required by N.C. Gen. Stat. § 50-16.3A(b)(2) & (4) (1995), because it failed to include plaintiff's severance pay in the calculation. The trial court found that pursuant to a separation agreement with plaintiff's employer, plaintiff would receive a "severance payment" in the gross amount of $125,000.00, with monthly payments to follow.

Both this Court and our Supreme Court have already determined that severance pay should be included as income for purposes of determining a proper child support award. *See Lawrence v. Tise*, 107 N.C. App. 140, 419 S.E.2d 176 (1992); *Askew v. Askew*, 119 N.C. App. 242, 458 S.E.2d 217 (1995); *Gibson v. Gibson*, 24 N.C. 520, 211 S.E.2d 522 (1975); N.C. Gen. Stat. § 50-16.3A(b)(4) (1995). In addition, although "income" is not defined in our alimony law, the North Carolina Child Support Guidelines (Guidelines) include severance pay in its detailed definition of gross income. N.C. ADMIN. OFFICE OF THE COURTS, N.C. CHILD SUPPORT GUIDELINES AOC-A-162, at 2 (1994). There appears to be no good reason to employ a different definition of income for the purposes of a child support award than for an alimony award. Therefore, we conclude that severance pay is properly includable in a spouse's income for the purposes of determining the amount and duration of an alimony award.

However, it is not clear in the instant case whether the $125,000.00 payment to plaintiff should be classified as severance pay in the usual sense of the phrase. The American Heritage Dictionary 1123 (2d ed. 1982) defines "severance pay" as "[a] sum of money usually based on length of employment for which an employee is eligible upon termination." Although at one point in its order, the trial court characterized the one time payment of $125,000.00 as "severance pay," it later went on to find that the payment was a "bargained-for payment for which Plaintiff gave up various rights and should not be included as part of Plaintiff's income." Thus the record is equivocal as to whether the trial court correctly excluded the initial $125,000.00 payment to plaintiff from her income.

In determining how to characterize the payment to plaintiff, the trial court should use the "analytic" approach adopted by our Supreme Court in *Johnson v. Johnson*, 317 N.C. 437, 346 S.E.2d 430 (1986), a case decided under our Equitable Distribution Act. In *Johnson*, our Supreme Court determined that the analytic approach should be used in characterizing portions of a personal injury award as either marital or separate property. "The analytic approach asks what the award was intended to replace . . . ." *Id.* at 446, 346 S.E.2d at 435. As we cannot determine from the order in this case what loss the $125,000.00 award was designed to replace, we must remand this issue to the trial court for proper findings of fact.

### B. Plaintiff's Retirement Savings

[2] Defendant argues the trial court also erred in excluding plaintiff's deferred compensation and contributions to her 401(K) plan from her net disposable "take home pay." Plaintiff had amounts deducted from her monthly pay pursuant to a contract for deferred compensation that totaled $16,500.00 per year during the marriage of the parties. During the parties' separation, plaintiff entered into a new contract with increased deductions of $20,000.00 per year.

The trial court found that based on the parties' savings practices during the marriage, and the fact that the "standard of living of the parties included substantial savings for retirement[,]" plaintiff's contributions to deferred compensation and retirement plans should not be included in her net disposable income. Plaintiff argues the trial court did not err because it also excluded defendant's contributions to his Keogh plan.

Although we agree that the trial court can properly consider the parties' custom of making regular additions to savings plans as a part

of their standard of living in determining the amount and duration of an alimony award, we conclude the trial court erred in this case when it excluded amounts paid into savings accounts by the parties from their respective incomes. If such an exclusion were allowed, a spouse could reduce his or her support obligation to the other by merely increasing his or her deductions for savings plans. Likewise, a spouse might increase an alimony award by deferring a portion of his or her income to a savings account. Further, our case law establishes that the purpose of alimony is not to allow a party to accumulate savings. *See Sguros v. Sguros*, 252 N.C. 408, 114 S.E.2d 79 (1960); *Roberts v. Roberts*, 30 N.C. App. 242, 226 S.E.2d 400 (1976). Thus, this issue must be remanded to the trial court for a redetermination of the parties' income consistent with this opinion.

### C. Defendant's Income

[3] In addition, defendant claims the trial court erred in calculating his income. Defendant sells insurance and part of his income is generated by a "loss ratio" bonus. This bonus is not earned if losses paid on the insurance exceed a certain amount in proportion to the total insurance written. Defendant produced evidence that, based on the damage caused by hurricanes and other losses policyholders sustained in 1996, he would not receive a loss ratio bonus in 1997, 1998, or 1999. In addition, defendant was restricted from writing insurance for property damage in the coastal areas of North Carolina, which would also result in a loss of commissions.

The trial court found defendant would experience a decrease in his annual income of approximately $80,000.00. Despite this reduction, the trial court found, without any supporting evidence of record, that "the Court is of the opinion that the Defendant will pick up additional business to replace his loss of the bonus and his coastal commission." Since the trial court did not have any evidence to support this finding, we agree with defendant that it was erroneous. Further, as we cannot tell from the record whether the trial court considered this improper finding in making its awards of alimony and child support, those issues must be remanded to the trial court.

### D. Marital Misconduct

[4] Next, defendant contends the trial court erred in concluding plaintiff-wife had not engaged in marital misconduct. Defendant claims plaintiff engaged in reckless spending amounting to marital misconduct, because she spent approximately $30,000.00 on clothing

the year prior to the parties' separation and further spent at least $23,520.00 on clothes between the date of the hearing in June 1996 and the hearing in January 1997.

Defendant points to the trial court's order finding that "[p]laintiff has not, during the period of separation, changed or reduced her spending habits. The Court find [*sic*] the Plaintiff's spending habits to be unreasonable and excessive." Defendant argues this finding requires the trial court to conclude plaintiff committed marital misconduct. We note that N.C. Gen. Stat. § 50-16.3A(b)(1) provides that "[n]othing herein shall prevent a court from considering incidents of post date-of-separation marital misconduct as *corroborating evidence* supporting other evidence that marital misconduct occurred during the marriage and prior to date of separation[.]" (Emphasis added.) Thus, the trial court could properly consider the postseparation expenditures by plaintiff.

However, the record reveals the trial court "finds that the *lifestyle established by the parties included excessive spending* in numerous areas. The parties were unable to maintain their current lifestyle from their income and thus borrowed monies on a regular basis to pay quarterly taxes and other expenses." (Emphasis added.) Based on the facts of this case, wherein the trial court found the pre-separation standard of living of both parties included excessive spending, the trial court did not err when it concluded plaintiff did not commit any marital misconduct. Thus, this assignment of error is overruled.

### E. Retroactive Alimony

[5] Finally, defendant argues the trial court erred in awarding alimony for a period prior to 1 October 1995, the effective date of the new alimony statute. Plaintiff originally filed a claim for alimony and alimony *pendente lite* on 11 July 1995, but she took a voluntary dismissal of these claims on 21 November 1995 and refiled an action for alimony and postseparation support on the same day in order to get the benefit of the new alimony statute applicable to actions filed on or after 1 October 1995.

In the instant case, the trial court awarded plaintiff alimony of $3,500.00 per month for ten years beginning 1 April 1995, a date prior to the refiling of this action. Defendant argues that an award of alimony for the period from 1 April 1995 through 21 November 1995 constitutes retroactive alimony, and that plaintiff could not receive alimony for that period without satisfying the fault-centered require-

ments of the alimony law in effect from 1 April 1995 through 30 September 1995.

Even if the trial court's ruling were found to be erroneous, it would appear to be harmless under the facts of this case. According to the uncontested findings of the trial court, after the parties separated, defendant voluntarily paid, for the benefit of his wife and child, the sums of approximately $9,000.00 per month for April through June 1995. During July through November 1995, defendant paid $5,500.00 per month. Thus, the total paid by defendant for the period in question was $54,500.00; and the trial court specifically found that defendant was entitled to a credit for the total amount. The trial court credited $2,500.00 each month of the amount paid as child support, and credited the balance against defendant's alimony obligation of $3,500.00. Defendant's total obligation for the eight months in question was thus $6,000.00 per month, or a total of $48,000.00. Thus defendant was not harmed by the ruling of the trial court beginning his alimony payments effective 1 April 1995, but actually accumulated a credit of $6,500.00 against future court-ordered alimony and support payments. Plaintiff did not cross-appeal from the trial court's findings.

We also note that this issue concerning retroactive alimony may not arise on remand, as the trial court will make new findings of fact and a new determination in accordance with this opinion.

## II. Child Support

[6] N.C. Gen. Stat. § 50-13.4(c) (1995) provides that "[p]ayments ordered for the support of a minor child shall be in such amount as to meet the reasonable needs of the child for health, education, and maintenance, having due regard to the estates, earnings, conditions, accustomed standard of living of the child and the parties, . . . and other facts of the particular case." The trial court has considerable discretion in considering the factors contained in N.C. Gen. Stat. § 50-13.4(c) when it is determining the appropriate amount of child support. *Boyd v. Boyd*, 81 N.C. App. 71, 78, 343 S.E.2d 581, 586 (1986). If the trial court's findings are supported by competent evidence in the record, its determination as to the proper amount of support will not be disturbed on appeal absent a clear abuse of discretion. *Plott v. Plott*, 313 N.C. 63, 69, 326 S.E.2d 863, 868 (1985).

Because the above-mentioned errors concerning the trial court's calculations of the parties' incomes require this matter to be

remanded for a new determination of child support and alimony, and the errors alleged by defendant may not arise again, we need not address them.

In summary, we affirm the trial court's ruling that the plaintiff was not guilty of marital misconduct; no error was assigned to the trial court's finding that defendant abandoned plaintiff; and we reverse the findings of the trial court with respect to the incomes of the parties. We remand the case for new findings of fact with regard to the current incomes and reasonable expenses of the parties, for a new determination on the issues of supporting spouse and dependent spouse, and for entry of a new child support award and alimony award.

For the foregoing reasons, the decision of the trial court is

Affirmed in part, reversed in part, and remanded.

Judges GREENE and LEWIS concur.