ANTOINETTE M. VADALA, Plaintiff v. RICHARD R. VADALA, Defendant

No. COA00-205

(Filed 7 August 2001)

**Divorce— alimony—relative earnings and earning capacities— accustomed standard of living—established pattern of savings**

The trial court erred by denying plaintiff wife's claim for alimony under N.C.G.S. § 50-16.3A(c) based on the fact that she was able to meet all of her monthly bills without the aid of alimony, because: (1) the trial court failed to make sufficient findings of fact regarding the relative earnings and earning capacities of the spouses; and (2) the trial court improperly felt it was unable to consider the parties' established pattern of savings in determining the standard of living to which the parties had grown accustomed during the marriage.

Appeal by plaintiff from judgment entered 6 August 1999 by Judge Lee Gavin in Moore County District Court. Heard in the Court of Appeals 26 February 2001.

*Staton, Perkinson, Doster, Post, & Silverman, P.A., by Jonathan Silverman, for plaintiff-appellant.*

*Cheshire, Parker, Schneider, Wells, & Bryan, by Jonathan McGirt, for defendant-appellee.*

CAMPBELL, Judge.

We note that plaintiff's brief fails to comply with our Rules of Appellate Procedure in several respects, and is therefore subject to dismissal for these violations. Nonetheless, as we feel that the issues in this case warrant our attention, we elect to review the matter pursuant to our discretionary powers under N.C.R. App. P. 2.

Plaintiff and defendant were married for 34 years. During the marriage, the couple put significant amounts of their income toward

their retirement, as they were hoping to retire in their early sixties. Over the years, the couple acquired approximately twenty-two different retirement accounts, to which they consistently contributed. Since their divorce, defendant has continued to put a substantial amount of his income into his retirement accounts. Plaintiff, however, contends that due to her lower income (which is approximately one-third of defendant's net income per month), and to her expenses (which account for all but approximately $170 of her net monthly pay), she is unable to retain the lifestyle to which she had been accustomed, namely: she will be forced to work much longer than she would have, had she continued to enjoy the standard of living to which she had become accustomed during her marriage, since she is unable to accumulate savings of an amount that would allow her to retire. As plaintiff was able to meet all of her monthly bills without the aid of alimony, the trial court denied her claim. Plaintiff appealed to this Court for further review.

The duties of the trial court regarding a claim for alimony can be found in N.C. Gen. Stat. § 50-16.3A(c) (1999), entitled "Findings of Fact." This section specifically states that the trial court "*shall* set forth the reasons for its award or denial of alimony and, if making an award, the reasons for its amount" and, with the exception of motions where the Rules of Civil Procedure do not require specific findings, that "the court *shall* make a specific finding of fact on each of the factors in subsection (b) of this section if evidence is offered on that factor." N.C. Gen. Stat. § 50-16.3A(c) (emphasis added).

This provision is mandatory, and it is a vital part of the trial court's order. The trial court must make findings of fact that are sufficiently detailed to allow review. *Rhew v. Rhew*, 138 N.C. App. 467, 470, 531 S.E.2d 471, 473 (2000). "The trial court must at least make findings sufficiently specific to indicate that the trial judge properly considered each of the factors . . . for a determination of an alimony award." *Skamarak v. Skamarak*, 81 N.C. App. 125, 128, 343 S.E.2d 559, 561 (1986), quoted in, *Rhew v. Rhew*, 138 N.C. App. 467, 470, 531 S.E.2d 471, 473 (2000). " 'In the absence of such findings, appellate courts cannot appropriately determine whether the order of the trial court is adequately supported by competent evidence, and therefore such an order must be vacated and the case remanded for necessary findings.' " *Rhew*, 138 N.C. App. at 470, 531 S.E.2d at 473 (quoting *Talent v. Talent*, 76 N.C. App. 545, 548-49, 334 S.E.2d 256, 258 (1985)).

We conclude that the trial court did not make sufficient findings of fact in regards to the alimony portion of the order, and therefore, that we are unable to sufficiently review these findings of fact and the court's subsequent conclusions of law.

As stated above, N.C. Gen. Stat. § 50-16.3A(c) requires the trial court to make sufficient findings on each of the factors listed in subsection (b). At the time of this trial, subsection (b) contained factors one through fifteen, with factor number sixteen taking effect in 1998. Therefore, our analysis is confined to the first fifteen factors.

The trial court must make sufficiently specific findings of fact on each factor listed in subsection (b) for which evidence is offered. N.C. Gen. Stat. § 50-16.3(c). While we find evidence in the record to support findings on several factors in subsection (b), since we remand the case due to insufficient findings, we will not address each of these factors. Two of these factors, however, do merit further instruction.

Specifically, under factor (2), the trial court must consider the relative earnings and earning capacities of the spouses. The trial court did make findings as to plaintiff's income in its finding of fact number 1, however, this finding is not sufficiently detailed. Finding of fact number 1, reads: "The Plaintiff has been employed as a medical transcriptionist for fifteen years, and has a gross income of $2,075 per month; and, after taxes, her net income is $1,572 per month." This may be so, but we have no way to confirm or deny this finding as it gives no indication as to how it was calculated. Indeed, the parties themselves dispute this finding of fact with each arguing different methods for calculating this income. In addition, the trial court found no facts regarding defendant's income whatsoever.

The second factor that we need to address is factor number (8), which examines the standard of living to which the parties had grown accustomed during the marriage.

In order to be entitled to alimony, the party seeking alimony must establish that: "(1) that party is a dependent spouse; (2) the other party is a supporting spouse; and (3) an award of alimony would be equitable under all the relevant factors." *Barrett v. Barrett*, 140 N.C. App. 369, 371, 536 S.E.2d 642, 644 (2000). A dependent spouse is one who is "actually substantially dependent upon the other spouse for his or her maintenance and support or is substantially in need of maintenance and support from the other spouse." N.C. Gen. Stat.

§ 50-16.1A(2) (1999). As this Court has said before, "[i]n other words, the court must determine whether one spouse would 'be unable to maintain his or her accustomed standard of living, established prior to separation, without financial contribution from the other.' " *Rhew*, 138 N.C. App. at 470, 531 S.E.2d at 473 (quoting *Talent v. Talent*, 76 N.C. App. 545, 548, 334 S.E.2d 256, 258-59 (1985)).

In its finding of fact number five, the trial court stated: "[t]he Court considered the Plaintiff's contention that she needs to save for her retirement; however, the Court did not consider this 'need' in determining her status as a dependent spouse for purposes of alimony." Further, in its conclusion of law number four, the court concluded that "[t]he Plaintiff's alleged 'need' to save for her retirement *is not properly considered by the Court* in accessing [sic] the Plaintiff's needs for alimony, nor in determining her status as a dependent spouse." (Emphasis added.)

It appears from these statements that the trial court felt it was unable to consider the parties' pattern of saving for their retirement. Recent case law, however, has determined that a pattern of savings *may* be considered by the court in determining alimony.

This Court recently held in *Glass v. Glass*, 131 N.C. App. 784, 789-90, 509 S.E.2d 236, 239 (1998), that an established pattern of contributing to a retirement or savings plan may be considered by the trial court in determining the parties' accustomed standard of living. *Glass* cautioned, however, that a party's savings should not be used to "reduce his or her support obligation to the other by merely increasing his or her deductions for savings plans," nor should a spouse be able to "increase an alimony award by deferring a portion of his or her income to a savings account," emphasizing that "the purpose of alimony is not to allow a party to accumulate savings." *Glass*, 131 N.C. App. at 790, 509 S.E.2d at 239-40.

Then, in *Rhew v. Rhew*, 138 N.C. App. 467, 531 S.E.2d 471 (2000), (a case which we note, was decided by this Court after the trial court in the case *sub judice* had entered its order denying alimony), we clarified our holding in *Glass*, finding that although the parties' pattern of savings may not be determinative of a claim for alimony, the trial court must at least consider this pattern in determining the parties' accustomed standard of living.

We find *Rhew* analogous to the case now before us in several respects. In *Rhew*, the parties were found to have "enjoyed a com-

fortable standard of living," and had "budgeted a sizeable portion of their income to savings and retirement accounts," as had the parties in the case at hand. *Id.* at 468, 531 S.E.2d at 472. Likewise, the trial court in *Rhew* had declined to consider the parties' pattern of savings in determining whether to award alimony. However, soon after the trial court had entered its order, *Glass* was decided, which found that the trial court could " 'properly consider the parties' custom of making regular additions to savings plans *as a part of their standard of living* in determining the amount and duration of an alimony award.' " *Rhew*, 138 N.C. App. at 473, 531 S.E.2d at 475 (2000) (quoting *Glass*, 131 N.C. App. 784, 789-90, 509 S.E.2d 236, 239 (1998)).

The *Rhew* Court went on to say:

> Although the Court in *Glass* properly identified the difficulty that might arise when a party increased or decreased his or her contribution to savings in order to manipulate an alimony award, no such problem exists here. Evidence was presented that established an historical pattern of such contributions, which satisfied the requirement in *Glass* that there be a custom of regular savings. Therefore, the trial court erred when it found in . . . its order that "it appears that defendant has the ability to provide 'reasonable subsistence' for herself *consistent with the parties' accustomed standard of living*" without considering contributions to savings.

*Id.* at 473, 531 S.E.2d at 475.

Similarly, inasmuch as it appears the trial court here felt it was unable to consider the parties' established pattern of savings in determining plaintiff's claim for alimony, the judgment of the trial court must be reversed and remanded for reconsideration of this claim.

Upon remand, the trial court shall review all relevant factors under N.C. Gen. Stat. § 50-16.3A(b), including the parties' pattern of retirement savings as it pertains to the parties' accustomed standard of living pursuant to N.C. Gen. Stat. § 50-16.3(b)(8), and make sufficient findings of fact as to the same.

Reversed and remanded.

Chief Judge EAGLES and Judge HUNTER concur.